UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TRACI HANER,
                       Plaintiff

vs.

COUNTY OF NIAGARA, NEW YORK and
SHERIFF OF THE COUNTY OF NIAGARA
                       Defendants

THIRD AMENDED COMPLAINT
19-CV-754

Jury Trial Demanded

## COMPLAINT

1.    This is a complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., the Pregnancy Discrimination Act, 42 USC § 2000e(k), et seq., and the Americans with Disabilities Act, 42 U.S.C §§ 12101, and et seq.  Plaintiff also raises claims pursuant to the New York Human Rights Law and Workers Compensation law.

2.    As is set forth in detail, below, Defendant subjected the Plaintiff to a hostile work environment on the basis of her gender; denied the Plaintiff promotions because of her gender (female), her pregnancy, and/or her temporary disability; denied Plaintiff reasonable accommodations of her pregnancy-related and other disabilities; and retaliated against her in violation of state and federal law.

## JURISDICTION AND VENUE

3.    Jurisdiction is conferred upon this Court by 28 USC § 1331, and 28 USC § 1343; supplemental jurisdiction over Plaintiff's state law claims is conferred upon this Court by 28 USC § 1367.

1

4.  Plaintiff has exhausted administrative remedies; all conditions precedent to the filing of suit have been performed or have occurred.

5.  A copy of the charge filed with the Equal Employment Opportunity Commission ("EEOC") on May 13, 2016, EEOC Charge No. 525-2016-00422, is attached hereto as Exhibit A.

6.  A copy of the charge filed with the EEOC on February 13, 2019, EEOC Charge No. 525-2019-00481, is attached hereto as Exhibit B.

7.  A copy of the March 8, 2019 determination of the EEOC advising Plaintiff of her right to sue with respect to certain claims raised in Charge No. 525-2019-00481, is attached hereto as Exhibit C.

8.  The EEOC attempted unsuccessfully to achieve a voluntary resolution of certain claims raised in the 2016 charge through conciliation.

9.  The EEOC subsequently referred both the 2016 and 2019 EEOC charges to the U.S. Department of Justice ("DOJ").

10. Copies of the Right to Sue letters issued by the DOJ with respect to certain of the issues raised in EEOC Charge No. 525-2016-00422, and EEOC Charge No. 525-2019-00481, are attached hereto as Exhibit D.

11. Venue is properly laid in the Western District of New York pursuant to 28 USC § 1391(b) because the Defendants are located in the Western District of New York, and because the events giving rise to the Complaint occurred in the Western District of New York.

**PARTIES**

12. Plaintiff TRACI HANER ("Plaintiff" or "HANER") is a woman.

13. In 2015 and 2016, Plaintiff HANER was pregnant.

14. In 2016, Plaintiff HANER was a person with a disability relating to her pregnancy within the meaning of the relevant statutes.

15. In 2018, Plaintiff HANER was a person with a disability within the meaning of the relevant statutes, when her knee and ankle were injured and subject to treatment by a physician and a physical therapist.

16. Defendant COUNTY OF NIAGARA, NEW YORK ("NIAGARA COUNTY" or "COUNTY") is a governmental body created pursuant to the laws of the State of New York and located within the Western District of New York.

17. Defendant SHERIFF OF THE COUNTY OF NIAGARA ("SHERIFF" or "SHERIFF'S DEPARTMENT") is a governmental entity, department of subdivision established pursuant to the laws of the State of New York and located within the Western District of New York.

18. Defendant NIAGARA COUNTY is a "person" within the meaning of 42 USC § 2000(e)(a) and an "employer" within the meaning of 42 USC §2000(e)(b).

19. Defendant SHERIFF is a "person" within the meaning of 42 USC § 2000(e)(a) and an "employer" within the meaning of 42 USC §2000(e)(b).

**FACTS**

20. At all times relevant to this Complaint, Defendants SHERIFF and NIAGARA COUNTY operated the Niagara County Jail in Lockport, New York.

21. The Plaintiff began her employment with Defendants as a part-time Correction Officer in Spring 2004, and became a full time Corrections Officer in 2007.

22. The Plaintiff was employed as a Correction Officer in the Niagara County Jail, at all times relevant to this Complaint.

23. On or about August 11, 2015, Plaintiff applied to take the Niagara County Civil Service Exam(s) for Correction Lieutenant and Correction Captain.

24. On October 26, 2015, Defendants established a Civil Service Eligible List for the title of Correction Captain ("2015 Captain List").

25. Plaintiff was ranked B2, and was the third person named on the 2015 Captain List.

26. Also, on October 26, 2015, Defendants established a Niagara County Civil Service Eligible List for promotion to the position of Correction Lieutenant ("2015 Lieutenant List").

27. Thirteen persons were identified as eligible for promotion on the 2015 Lieutenant List.

28. Three of the thirteen persons on the 2015 Lieutenant List were women.

29. Plaintiff was ranked D4 on the 2015 Lieutenant List, and was the eleventh person named on the list.

30. A second woman was ranked C1 on the 2015 Lieutenant List, and was the fourth person named on the list.

31. A third woman was ranked D6 on the 2015 Lieutenant List, and was the thirteenth person named on the list.

32. In October or November of 2015, the Plaintiff notified Defendants that she was pregnant.

33. In 2016, Plaintiff was temporarily disabled due to her pregnancy.

34. In January 2016 Plaintiff provided two notes to Defendants from her doctor requesting accommodation, including, but not limited to, no contact with inmates.

35. During Plaintiff's previous pregnancy while employed by Defendants, she had been assigned to a position with little or no inmate contact.

36. After receiving Plaintiff's doctor's note in January 2016, Defendants' representative, Deputy Chief Engert, advised Plaintiff that he did not understand what no contact with inmates meant.

37. On or about January 29, 2016, Defendants offered Plaintiff a combination of four different positions as an accommodation, specifically: Central Control, Rover, Exercise Officer, and Visitation Officer.

38. The Central Control position did not involve inmate contact.

39. The Rover, Exercise Officer, and Visitation Officer positions all required inmate contact.

40. The Rover, Exercise Officer, and Visitation Officer positions offered by Defendants did not meet the accommodation request.

41. In the January 29, 2016 communication, Defendants advised Plaintiff that she would be required to work part of her shift in Central Control and part of her shift in an assignment that involved inmate contact.

42. Plaintiff was not permitted to work the Central Control position for a full shift during her pregnancy.

43. Upon information and belief Defendants had a prior policy that provided accommodation of full-time assignment in Central Control to pregnant females.

44. In January or February of 2016 Plaintiff inquired about the prior policy governing pregnant females.

45. In 2016, Deputy Chief Engert advised Plaintiff that no such policy existed.

46. Upon information and belief, males with temporary and permanent disabilities had been provided accommodations and/or light duty assignments.

47. Upon information and belief, males' accommodations and/or light duty assignments included full-shift assignments to the Central Control position.

48. Plaintiff suffered additional complications related to her pregnancy because she was not provided a light-duty assignment that complied with the restrictions and accommodations recommended by her doctor.

49. Plaintiff was subjected to harassment by her supervisors in that some of her supervisors complained about Plaintiff's medically imposed restrictions in front of her co-workers.

50. Plaintiff was referred to as "BLT" or "Big Lazy Traci".

51. Plaintiff reported the name-calling and harassment to Defendants.

52. Plaintiff asked that Defendants use discretion when handling the complaint referenced in ¶ 51 because Plaintiff was concerned about retaliation from her co-workers.

53. Subsequent to the report described in ¶ 51, Plaintiff's co-workers shunned Plaintiff, and she was on at least one occasion referred to as a "snitch".

54. On March 4, 2016, Defendants published a Niagara County Civil Service Certification of Eligibles ("2016 Lieutenant List") for the title of Correction Lieutenant.

55. The 2016 Lieutenant List included the persons who had been ranked first, second, third, fourth, fifth, sixth, eighth, ninth, tenth, eleventh and thirteenth on the 2015 Lieutenant List.

56. In March 2016, the Plaintiff was one of three women under consideration for promotion to the position of Correction Lieutenant in the Niagara County Jail.

57. Plaintiff was listed tenth on the 2016 Lieutenant List; the other two women were listed fourth and eleventh.

58. On or about March 27, 2016, Defendants promoted to the position of Correction Lieutenant the men listed first, third, sixth, seventh, eighth, and ninth on the 2016 Lieutenant List.

59. The woman who was ranked C1 ("Female C1"), and who was the fourth person on the list, was offered a Correction Lieutenant position for the midnight shift, a shift she had previously advised Defendants she was unable to work.

60. Female C1 declined the promotion to Correction Lieutenant in 2016.

61. Upon information and belief Female C1 declined the promotion to Correction Lieutenant solely because the position was for the midnight shift, which Female C1 could not work.

62. Promotion to Correction Lieutenant was offered to the men who ranked C3, D1, D2 and D3, and who were sixth, seventh, eighth, and ninth on the 2016 Lieutenant List.

63. The man who was ranked C3, and was sixth on the 2016 Lieutenant List, below Female C1, was hired for the 4 p.m. to midnight shift.

64. Upon information and belief, Female C1 had informed Defendants that she was available to work the 4 pm. to midnight shift.

65. The man was ranked D2, and who was eighth on the 2016 Lieutenant List, below Female C1, was hired for the day shift.

66. Upon information and belief, Female C1 had informed Defendants that she was available to work the day shift.

67. Plaintiff, who was the next person on the list after the man who was ninth on the list, was not offered the position of Correction Lieutenant in March 2016.

68. In 2016 and 2017, Plaintiff was breastfeeding her youngest child.

7

69. In 2016 and 2017 Plaintiff was required to clock out and take leave without pay to express breast milk to feed her child.

70. Plaintiff was required to remain "on call" during her lactation breaks.

71. Plaintiff was required to travel to a remote location for her lactation breaks.

72. Plaintiff was not allowed to store equipment or supplies in the room to which she was assigned for lactation breaks.

73. Plaintiff was required to defer to the schedules of other officers in order to ensure coverage of her posts when she took her lactation breaks.

74. Upon information and belief, in 2016 and 2017 male employees were allowed to take cigarette and food breaks without clocking out.

75. Upon information and belief, in 2016 and 2017 male employees were not required to take leave without pay for cigarette and food breaks.

76. Plaintiff was not permitted to have her infant brought to the workplace to be nursed.

77. Upon information and belief, a male employee was permitted to bring his child to work.

78. In 2017 Plaintiff established a claim for Workers Compensation under New York law for injuries to her right ankle and knee.

79. Plaintiff applied for Family and Medical Leave Act ("FMLA") leave in January 2018 to attend physical therapy appointments for a work-related injury to her right foot, ankle and/or knee.

80. Defendants failed to assist with the completion of the FMLA documents in January 2018.

81. Because Plaintiff was unable to take FMLA leave to attend physical therapy, she was discharged from physical therapy without receiving treatment.

82. Plaintiff's doctor ordered Plaintiff off work in March 2018 for what was ultimately diagnosed as stress fractures in the right foot.

83. Plaintiff's doctor ordered Plaintiff to wear a special walking boot in March 2018.

84. Plaintiff suffered an injury to her left knee in May or June 2018 when she fell while wearing the doctor-ordered special boot.

85. Defendants continued to oppose Plaintiff's FMLA leave request in spring/summer 2018.

86. Defendants did not oppose requests for FMLA leave submitted by male officers.

87. After the injuries described in ¶¶ 82 and 84, Plaintiff was medically excused from work.

88. Defendants opposed Plaintiff's Worker's Compensation application in spring/summer 2018.

89. On June 21, 2018, Defendants published a Niagara County Civil Service Certification of Eligibles ("2018 Certification List") for the title of Correction Lieutenant.

90. The 2018 Certification List included the persons who had been ranked second, fourth, fifth, seventh, eleventh and twelfth on the 2015 Lieutenant List.

91. The woman who had ranked fourth on the 2015 Lieutenant List was ranked second on the 2018 Certification List.

92. Plaintiff was ranked fifth on the 2018 Certification List.

93. The 2018 Certification List did not include the woman who had ranked thirteenth on the 2015 Lieutenant List.

94. On or about July 15, 2018, Defendants promoted the man who was ranked sixth on the 2018 Certification List to the position of Correction Lieutenant.

95. On or about July 15, 2018, both the Plaintiff and Female C1 were ranked higher on the 2018 Certification List than the man who was promoted to Correction Lieutenant.

96. In September 2018 Defendants advised the Worker's Compensation Law Judge handling Plaintiff's case that Plaintiff "set out to confuse the record in her favor, causing intentional delay, which is evidence of bad faith."

97. On information and belief, Defendants' actions were in retaliation for Plaintiff's exercise of her rights under the Worker's Compensation law.

98. The Worker's Compensation Law Judge ruled against the Plaintiff.

99. A Worker's Compensation Board panel reversed the Law Judge's decision on August 12, 2019.

100. In September 2018, the US Department of Labor required Defendants to award Plaintiff FMLA leave dating back to May 2018.

101. Plaintiff was out of work from mid-May, through mid-September of 2018 pursuant to her doctor's orders.

102. On or about September 21, 2018, Defendant notified Plaintiff that her May 2018 FMLA leave request had been retroactively approved.

103. On or about September 21, 2018, Defendants also notified Plaintiff that the time she was off work after July 30, 2018, pursuant to her doctor's orders, exceeded the FMLA total allowable leave, and would not be approved.

104. Defendants did not engage in interactive discussion with Plaintiff about any need to extend her FMLA leave time.

105. On or about November 30, 2018, Defendants charged Plaintiff with misconduct, and attempted to terminate Plaintiff's employment.

106. Defendants' November 2018 charges included allegations that a) Plaintiff had been absent without leave on or about August 9, 2018; b) Plaintiff made an obscene hand gesture

toward the driver of another vehicle: and c) Plaintiff violated the New York Penal Law's prohibition on falsely reporting an incident.

107. In the Fall of 2018, Plaintiff was not permitted to borrow leave against unearned holiday leave.

108. On information and belief, male correction officers were allowed to borrow leave against unearned holiday leave.

109. On June 7, 2019, Plaintiff filed the Complaint in this action alleging, *inter alia*, discriminatory and retaliatory failure to promote.

110. Before filing the instant complaint, Plaintiff had filed charges of discrimination with the Equal Employment Opportunity Commission on May 13, 2016, and February 13, 2019.

111. Plaintiff had also filed a lawsuit in this Court on April 30, 2009 against the Defendants herein, alleging discrimination on the basis of pregnancy, 09-cv-417-RJA-HBS.

112. 09-cv-417-RJA-HBS settled on September 14, 2009.

113. On March 14, 2020, Plaintiff took a civil service examination for the position of Correction Lieutenant.

114. On August 24, 2020, the Niagara County Civil Service commission published a Niagara County Civil Service Eligible List ("2020 Eligible List") for the title of Correction Lieutenant.

115. Plaintiff Haner scored 95 on the test, which was the highest score.

116. Plaintiff was ranked A1 on the 2020 Eligible list.

117. Two male correction officers achieved the next lower score of 90, and were ranked B1 and B2 on the 2020 Eligible list.

118. Plaintiff was interviewed for the position of Correction Lieutenant in the Niagara County Jail on or about September 9, 2020.

119.    On September 22, 2020, Defendants announced that the position of Correction Lieutenant had been awarded to Kevin Austin, one of the two male officers who had scored the second-highest score of 90.

120.    Although Mr. Austin and Plaintiff both were assigned 3.0 seniority points by the Defendant's Civil Service Commission, Plaintiff's date of hire was nearly a year earlier than Mr. Austin's.

121.    Plaintiff has an Associate's Degree in Criminal Justice from Niagara Community College.

122.    Mr. Austin does not have a college degree.

123.    On information and belief, Plaintiff was not selected for promotion to Correction Lieutenant because she is a woman.

124.    On information and belief, Plaintiff was not selected for promotion to Correction Lieutenant in retaliation for having previously complained of discrimination.

**FIRST CAUSE OF ACTION:  DISCRIMINATION ON THE BASIS OF GENDER IN VIOLATION OF TITLE VII**

125.    Plaintiff reasserts and realleges the allegations set forth in ¶¶ 1 through 124 as though fully set forth herein.

126.    Defendants discriminated against the Plaintiff on the basis of her gender (female) by a) failing to promote her to the position of Correction Lieutenant in 2016, and/or 2018, and/or 2020; b) subjecting her to a hostile work environment on the basis of her gender and pregnancy; and/or c) denying her leave time for lactation breaks in the same manner as Defendants afforded

time to male employees for cigarette and food breaks, thus denying Plaintiff equitable treatment on the basis of her gender.

127.    Defendants acted knowingly and intentionally, despite their awareness that their actions violated Plaintiff's rights under state and federal law.

128.    As a result of Defendants' illegal actions, Plaintiff has suffered economic loss, loss of enjoyment of life, emotional pain and suffering, and loss of future earnings.

**SECOND CAUSE OF ACTION:  DISCRIMINATION ON THE BASIS OF PREGNANCY IN VIOLATION OF TITLE VII**

129.    Plaintiff reasserts and realleges the allegations set forth in ¶¶ 1 through 128 as though fully set forth herein.

130.     Defendants discriminated against the Plaintiff on the basis of her pregnancy by a) failing to promote her to the position of Correction Lieutenant in 2016; and/or b) in 2016 denying her reasonable accommodation of her pregnancy-related disabilities.

131.    Defendants acted knowingly and intentionally, despite their awareness that their actions violated Plaintiff's rights under state and federal law.

132.    As a result of Defendants' illegal actions, Plaintiff has suffered economic loss, loss of enjoyment of life, emotional pain and suffering, and loss of future earnings.

**THIRD CAUSE OF ACTION:  DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

133.    Plaintiff reasserts and realleges the allegations in ¶¶ 1 – 131 as though fully set forth herein.

134. Defendant discriminated against Plaintiff on the basis of her disability by a) failing to promote her to the position of Correction Lieutenant in 2016 and/or 2018, and or 2020; and/or b) denying her reasonable accommodation of her disabilities in 2016 and/or 2018.

135. Defendants acted knowingly and intentionally, despite their awareness that their actions violated Plaintiff's rights under state and federal law.

136. As a result of Defendants' illegal actions, Plaintiff has suffered economic loss, loss of enjoyment of life, emotional pain and suffering, and loss of future earnings.

### FOURTH CAUSE OF ACTION: DISCRIMINATION IN VIOLATION OF New York STATE HUMAN RIGHTS LAW

137. Plaintiff reasserts and realleges the allegations set forth in ¶¶ 1 through 136 as though fully set forth herein.

138. Defendants discriminated against Plaintiff on the basis of her gender, pregnancy and disability by a) failing to promote her to the position of Correction Lieutenant in 2016, and/or 2018, and/or 2020; b) subjecting her to a hostile work environment on the basis of her gender and pregnancy; c) failing to provide accommodations of her disabilities in 2016 and/or 2018; d) failing to provide reasonable accommodations for her pregnancy-related disability in 2016; and/or e) denying her leave time for lactation breaks in the same manner as Defendants afforded time to male employees for cigarette and food breaks, thus denying Plaintiff equitable treatment on the basis of her gender.

139. Defendants acted knowingly and intentionally, despite their awareness that their actions violated Plaintiff's rights under state and federal law.

140. As a result of Defendants' illegal actions, Plaintiff has suffered economic loss, loss of enjoyment of life, emotional pain and suffering, and loss of future earnings.

### FIFTH CAUSE OF ACTION: RETALIATION UNDER TITLE VII

141. Plaintiff reasserts and realleges the allegations set forth in ¶¶ 1 through 140 as though fully set forth herein.

142. Defendants retaliated against Plaintiff on the basis of her gender and pregnancy by a) failing to promote her to the position of Correction Lieutenant in March of 2016 and/or 2018 and/or 2020; b) denying her FMLA leave; c) attempting to terminate her employment; and/or d) denying her leave time for lactation breaks in the same manner as Defendants afforded time to male employees for cigarette and food breaks, thus denying Plaintiff equitable treatment on the basis of her gender.

143. Defendants acted knowingly and intentionally, despite their awareness that their actions violated Plaintiff's rights under state and federal law.

144. As a result of Defendants' illegal actions, Plaintiff has suffered economic loss, loss of enjoyment of life, emotional pain and suffering, and loss of future earnings.

### SIXTH CAUSE OF ACTION: RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT

145. Plaintiff reasserts and realleges the allegations set forth in ¶¶ 1 through 144 as though fully set forth herein.

146. Defendants retaliated against Plaintiff in violation of the Americans With Disabilities Act by a) failing to promote her to the position of Correction Lieutenant in 2016, and/or 2018, and/or

2020; b) denying her FMLA leave; c) attempting to terminate her employment; and/or d) denying her leave time for lactation breaks in the same manner as Defendants afforded time to male employees for cigarette and food breaks, thus denying Plaintiff equitable treatment on the basis of her gender.

147. Defendants acted knowingly and intentionally, despite their awareness that their actions violated Plaintiff's rights under state and federal law.

148. As a result of Defendants' illegal actions, Plaintiff has suffered economic loss, loss of enjoyment of life, emotional pain and suffering, and loss of future earnings.

## SEVENTH CAUSE OF ACTION RETALIATION UNDER NEW YORK STATE HUMAN RIGHTS LAW

149. Plaintiff reasserts and realleges the allegations set forth in ¶¶ 1 through 148 as though fully set forth herein.

150. Defendants retaliated against Plaintiff on the basis of her gender, pregnancy, and/or disability by a) failing to promote her to the position of Correction Lieutenant in 2016, and/or 2018, and/or 2020; b) denying her FMLA leave; c) attempting to terminate her employment; and/or d) denying her leave time for lactation breaks in the same manner as Defendants afforded time to male employees for cigarette and food breaks, thus denying Plaintiff equitable treatment on the basis of her gender.

151. Defendants acted knowingly and intentionally, despite their awareness that their actions violated Plaintiff's rights under state and federal law.

152. As a result of Defendants' illegal actions, Plaintiff has suffered economic loss, loss of enjoyment of life, emotional pain and suffering, and loss of future earnings.

## EIGHTH CAUSE OF ACTION RETALIATION UNDER NEW YORK STATE WORKER'S COMPENSATION LAW

153. Plaintiff reasserts and realleges the allegations set forth in ¶¶ 1 through 151 though fully set forth herein.

154. Defendants retaliated against Plaintiff in violation of New York Worker's Compensation Law by baselessly accusing her of Worker's Compensation fraud.

155. As a result of Defendants' illegal actions, Plaintiff has suffered loss of enjoyment of life, emotional pain and suffering.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter Judgment:

1. Holding that Defendants have violated Plaintiff's rights under Title VII, the Americans with Disabilities Act, the New York Human Rights Law, and New York Worker's Compensation law.

2. Promoting Plaintiff to the highest position for which she is qualified;

3. Enjoining Defendants from engaging in further discrimination against the Plaintiff;

4. Enjoining Defendants from: (i) subjecting employees to discrimination and harassment based on their sex and/or disability; and (ii) retaliating against employees who engage in activity protected under Title VII, the Americans with Disabilities Act, the New York Human Rights Law, and/or the New York Workers Compensation Law;

5. Awarding Plaintiff back pay and benefits with interest, and restoration of leave and seniority, to make Plaintiff whole for the losses she has suffered as a result of the discrimination alleged in this Complaint;

6. Awarding Plaintiff compensatory damages as a result of the discrimination alleged in this Complaint;

7. Awarding Plaintiff punitive damages;

8. Awarding Plaintiff attorney's fees and costs.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues triable by jury.


Dated: January 29, 2021


/s/ Elizabeth Tommaney                                         /s/ Anna Marie Richmond

| ELIZABETH TOMMANEY | ANNA MARIE RICHMOND |
| Attorney for Plaintiff | Attorney for Plaintiff |
| 2500 Rand Building | 2500 Rand Building |
| 14 Lafayette Square | 14 Lafayette Square |
| Buffalo, NY  14203-1295 | Buffalo, NY  14203-1295 |
| 716-242-1550 | 716-854-1100 |
| liza@tommaneylegal.com | annamarierichmondesq@gmail.com |