UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

—————————————————————

TRACI HANER,

            Plaintiff,

     v.

COUNTY OF NIAGARA, NEW YORK,
and SHERIFF OF THE COUNTY OF
NIAGARA, NEW YORK,

            Defendants.

—————————————————————

       19-CV-754-LJV-MJP
       DECISION & ORDER

On June 7, 2019, the plaintiff, Traci Haner, a correction officer at the Niagara

County Jail, commenced this action under Title VII of the Civil Rights Act of 1964 ("Title

VII"), the Pregnancy Discrimination Act ("PDA"), and the Americans with Disabilities Act

("ADA").  Docket Item 1.  Her operative third amended complaint alleges that the

defendants, the County of Niagara and the Sheriff of Niagara County (collectively, "the

Defendants"), discriminated her against her based on her gender by denying her a

promotion, subjecting her to a hostile work environment, and failing to properly

accommodate her pregnancy restrictions; it also alleges that the Defendants retaliated

against her for filing complaints about their discriminatory actions with the Equal

Employment Opportunity Commission ("EEOC") and for filing this lawsuit.  Docket Item

58.

On August 20, 2019, this Court referred the case to United States Magistrate

Judge Hugh B. Scott for all proceedings under 28 U.S.C. § 636(b)(1)(A) and (B).

Docket Item 7.  On March 9, 2021, following the death of Judge Scott, the referral was

reassigned to United States Magistrate Judge Mark W. Pedersen.  Docket Item 51.

On January 27, 2022, the Defendants moved for summary judgment, Docket Item 66; on March 8, 2022, Haner responded, Docket Item 76; and on April 5, 2022, the Defendants replied, Docket Item 94.  After oral argument on May 9, 2022, Docket Item 105, Judge Pedersen issued a Report and Recommendation ("R&R") finding that the Defendants' motion should be granted, Docket Item 110.

On October 19, 2022, Haner objected to the R&R, Docket Item 113; on November 23, 2022, the Defendants responded to the objections, Docket Item 118; and on December 7, 2022, Haner replied, Docket Item 119.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The court must review *de novo* those portions of a magistrate judge's recommendation to which a party objects.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully and thoroughly reviewed the R&R; the record in this case; the objections, response, and reply; and the materials submitted to Judge Pedersen.  Based on that *de novo* review, the Court accepts and adopts Judge Pedersen's recommendation to grant the Defendants' motion for summary judgment as to all of Haner's claims except the claim alleging disparate treatment of Haner's lactation breaks, Docket Item 58 at ¶¶ 82(c), 86(c), 100, as to which summary judgment is denied.

## LEGAL PRINCIPLES

"A motion for summary judgment may be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017) (quoting Fed. R. Civ.

P. 56(a)).  "Summary judgment is appropriate when 'there can be but one reasonable conclusion as to the verdict,' i.e., 'it is quite clear what the truth is,' and no rational factfinder could find in favor of the nonmovant."  *Id.* (first quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986), then quoting *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467 (1962)).  Conversely, "[s]ummary judgment should be denied if, when the party against whom summary judgment is sought is given the benefit of all permissible inferences and all credibility assessments, a rational factfinder could resolve all material factual issues in favor of that party."  *Id.*  "In deciding such a motion, the court cannot properly make credibility determinations or weigh the evidence."  *Id.*

When addressing a motion for summary judgment, "[t]he court must view the evidence in the record in the light most favorable to the non-moving party" and "draw[] all reasonable inferences in that party's favor."  *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 465-66 (2d Cir. 2001).  But "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment."  *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).  Indeed, Rule 56 requires the party opposing a motion for summary judgment to support factual assertions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  And "[w]hile evidence produced by the party opposing a summary judgment motion need not be in a form that would be admissible at trial, its content must nonetheless be admissible."  *Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 675-76 (S.D.N.Y. 2012) (internal citations and internal quotation marks

omitted); *see also* Fed. R. Civ. P. 56(c)(4) (requiring that "[a]n affidavit or declaration used to support or oppose a [summary judgment] motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated").  Declarations that contain statements not based on personal knowledge, or consisting of inadmissible hearsay or conclusory statements, do not "create a genuine issue for trial."  *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004).

Where, as here, the non-moving party bears the ultimate burden of proof, the moving party can meet its summary judgment burden by noting the "absence of evidence" on an "essential element of the [non-moving] party's case," and the non-moving party then must proffer admissible evidence creating a genuine issue of fact on that element.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  Thus, a party seeking summary judgment may satisfy its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the [non-moving] party's case."  *Id.* at 325.

## DISCUSSION

The Court assumes the reader's familiarity with the facts alleged in the third amended complaint, *see* Docket Item 58, as well as Judge Pedersen's recitation of the facts and his analysis in the R&R, *see* Docket Item 110.

Haner objects to the R&R's recommendations on her claims that: (1) the Defendants refused to promote her to the position of lieutenant on the basis of gender, pregnancy, and disability in violation of Title VII and the ADA; (2) the Defendants failed to accommodate restrictions during her pregnancy in violation of Title VII and the ADA;

(3) the Defendants refused to grant her lactation breaks on the same terms as other employee breaks were granted in violation of Title VII and the ADA; (4) the Defendants disciplined her differently because of her gender in violation of Title VII; and (5) the Defendants retaliated against her in violation of Title VII and the ADA.  Docket Item 113 at 7-8.  She also challenges Judge Pedersen's finding that she failed to exhaust the claims raised in her Ninth (gender discrimination based on failure to promote in 2020) and Eleventh (retaliatory failure to promote in 2020) Causes of Action.  *Id.* at 8.  Haner did not object to Judge Pedersen's recommendation that the Defendants' motion for summary judgment be granted as to the remainder of her claims.[1]

## I.    FAILURE TO PROMOTE

Title VII prohibits an employer from failing to hire or discharging "any individual, or otherwise . . . discriminat[ing] against any individual . . . because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1).  "The Pregnancy Discrimination Act makes clear that Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy."  *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 210 (2015); *see also* 42 U.S.C. § 2000e(k).

"To succeed on a Title VII disparate treatment claim, a plaintiff must prove 'discrimination either by direct evidence of intent to discriminate' or, more commonly, by 'indirectly showing circumstances giving rise to an inference of discrimination.'"  *Bart v. Golub Corp.*, 96 F.4th 566, 569 (2d Cir. 2024) (quoting *Banks v. Gen. Motors, LLC*, 81

---

[1] Neither 28 U.S.C. § 636 nor Federal Rule of Civil Procedure 72 requires a district court to review the recommendation of a magistrate judge to which no objections are raised.  *See Thomas v. Arn*, 474 U.S. 140, 149-50 (1985).  Therefore, the Court accepts the recommendation to grant the Defendants' motion on all other claims.

F.4th 242, 270 (2d Cir. 2023)). "When only circumstantial evidence of discriminatory intent is available, courts use the *McDonnell Douglas* burden-shifting framework to assess whether the plaintiff has shown sufficient evidence of discrimination to survive summary judgment." *Id.*; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

"A plaintiff's first step under *McDonnell Douglas* is to establish a prima facie case of discrimination by showing that '(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination.'" *Bart*, 96 F.4th at 570 (quoting *Banks*, 81 F.4th at 270). "The burden at this stage 'is not onerous.'" *Id.* (quoting *Banks*, 81 F.4th at 270).

"Once the plaintiff has established a prima facie case, the burden shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its adverse action." *Id.* (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015)). "Upon that showing, the burden then shifts back to the plaintiff to prove that the employer's stated reason was pretext for discrimination." *Id.* "[A] plaintiff can satisfy that third-stage burden either by showing (1) that the employer's stated reason is false and merely a pretext for discrimination, or (2) that the employer's stated reason, although factually accurate, is not the only reason, because the employer's decision was also attributable to an impermissible consideration." *Id.* at 577. The same burden shifting analysis applies to claims raised under the ADA. *See Abbott v. Wyoming Cnty. Sheriff's Off.*, 2019 WL 4689045, at *7 (W.D.N.Y. Sept. 26, 2019).

An inference of discrimination can be drawn from "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about

others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the [adverse employment action]." *Abdu-Brisson*, 239 F.3d at 468 (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)); *see also Abdul-Hakeem v. Parkinson*, 523 F. App'x 19, 20 (2d Cir. 2013) (summary order) (finding that an inference of discrimination can be raised by "showing that an employer treated [an employee] less favorably than a similarly situated employee outside his protected group" (quoting *Ruiz v. County of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010))).  But a "[p]laintiff's subjective opinion about her own performance is insufficient to give rise to a triable issue of fact regarding pretext." *Paddock v. Brockport*, 418 F. Supp. 2d 288, 295 (W.D.N.Y. 2006); *see also Holt v. KMI-Cont'l, Inc.*, 95 F.3d 123, 130 (2d Cir.1996) (plaintiff's beliefs regarding her own qualifications insufficient to raise a triable issue of fact regarding discriminatory intent).

Haner objects to Judge Pedersen's recommendations that this Court should dismiss her discrimination claims based on the Defendants' failure to promote her to lieutenant in 2016, 2018, 2019, and 2020.  The Court addresses each available promotion in turn.

## A.    Failure to Promote in 2016

Judge Pedersen found that Haner failed to establish a *prima facie* case of discrimination with respect to the 2016 promotion because she did not show that the failure to promote her to lieutenant in 2016 occurred under circumstances giving rise to an inference of discrimination.  Docket 110 at 50.  He further concluded that even if Haner had established a *prima facie* case, the Defendants offered a nondiscriminatory

reason for not promoting her, and Haner failed to raise a question of fact as to whether the Defendants' reason was pretextual.  *Id.*  Haner objects, arguing that Judge Pedersen overlooked evidence of discriminatory animus and improperly drew inferences in favor of the Defendants.  Docket Item 113 at 9-14.

Six new lieutenant positions were created at the Niagara County Jail in 2015.  Docket Item 66-2 at ¶ 20-22.  Haner tied with three men to finish in fourth place on the civil service exam for those positions.  Docket Item 66-2 at ¶ 33.  The Defendants ultimately promoted six men to the position, including the three who tied Haner for fourth place.  Docket Item 69-4.

Haner argues that she raised an inference of discriminatory intent because (1) six men were promoted to the six available lieutenant positions three days before her scheduled interview for the promotion, rendering her interview a sham; (2) those interviewing her appeared bored, further evidence that the interview was a sham; (3) notes taken during her interview by Niagara County Jail Chief Kevin Payne show gender-based hostility; and (4) the Defendants questioned Haner's husband, who also worked as a correction officer at the jail, about the couple's child care arrangements should Haner be promoted.  Docket Item 113 at 9, 13 n.5.  In addition, Haner argues that she "presented evidence of [the] Defendants' refusal to even consider her candidacy on repeated occasions—the fact that she was 'scratched off the list' before even being considered."  Docket Item 119 at 6 (footnote omitted).

As evidence for her contention that the lieutenant positions were filled by six men before she was even interviewed, Haner relies on (1) information from an unnamed correction officer that the six had been promoted and would be meeting with the jail

administration the day before her interview; and (2) her husband's confirming that such a meeting was scheduled.  Docket Item 78 at ¶¶ 37-39.  Judge Pedersen found the evidence on which Haner relies to be hearsay—a finding that Haner does not challenge. Instead, she argues that Judge Pedersen failed to "afford[] [her] the same favorable inference afforded to [the] Defendants and their hearsay statements."  Docket 113 at 13.

To support their summary judgment motion, the Defendants submitted a declaration from current Sheriff Michael Filicetti.  Docket Item 69.  But Filicetti did not become sheriff until late 2019, *id*. at ¶ 1; James Voutour was the sheriff and decided all promotions before then, *id*. at ¶¶ 37, 53, and the Defendants did not submit a declaration from Voutour.  Therefore, Haner argues, the "Defendants have not submitted any admissible evidence as to Sheriff Voutour's basis for his selection" of who was promoted.  Docket Item 113 at 10.

In particular, Haner objects to Judge Pedersen's handling of paragraph 51 in the Defendants' Statement of Undisputed Material Facts, Docket Item 66-2, which asserts that those selected for promotions were deemed "most qualified based upon their Civil Service exam scores, feedback from supervisors, work records[,] disciplinary records, information contained within personnel files, and prior experience at the jail in various positions," *see* Docket Item 113 at 9-10.  As Haner notes, *see id*., that assertion lacked a citation to the record; in fact, Judge Pedersen acknowledged that a citation was missing, deemed it "an oversight," and relied on Filicetti's declaration as the record source, *see* Docket Item 110 at 13 & n.7 (noting that Filicetti averred that the 2016 promotion decisions were based on "[c]ivil [s]ervice exam scores, feedback from supervisors, work records, disciplinary records, information contained within personnel

9

files, and prior experience at the jail in various positions"); *see also* Docket Item 69 at

¶ 38 (Filicetti declaration).   Therefore, Haner argues, nothing other than Filicetti's

inadmissible hearsay evidenced the reason why Voutour chose six men to fill the

lieutenant positions in 2016, and Judge Pederson erred even in considering that

hearsay because the Defendants did not cite it to support the relevant paragraph.  *See*

Docket Item 110 at 9-10.

> For two reasons, this Court disagrees.

> First, it is well settled that "[a] court may . . . search the record for evidence which

the party opposing summary judgment fails to point to in his [Rule] 56 statement."

*Covelli v. Nat'l Fuel Gas Dist. Corp.*, 2001 WL 1823584, at * 1 (W.D.N.Y. Dec. 6, 2001).

By the same token, a court certainly may search the record for a citation that a party

seeking summary judgment omitted from a Local Rule 56 statement.  *See, e.g.*, *Holtz v.*

*Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (holding that when a party fails to file

a Rule 56.1 statement, the district court may "opt to conduct an assiduous review of the

record" (citation and internal quotation marks omitted)); *see also Sawyer v. Wight*, 196

F. Supp. 2d 220, 225 (E.D.N.Y. 2002) (holding that where Rule 56.1 has not been

properly followed, courts may "discretionarily choose to search the record of their own

accord" (internal citations omitted)).  Indeed, "[a] district court has broad discretion to

determine whether to overlook a party's failure to comply with local court rules."  *Holtz*,

258 F.3d at 73.  So Judge Pederson did not err by filling in a cite that the Defendants

inadvertently omitted.[2]

---

[2] It is clear that, as Judge Pederson concluded, the omission of the cite was simply "an oversight."  Docket Item 110 at 13 n.7.  Every paragraph but one—that is, 168 of 169 paragraphs—in the Defendants' Rule 56 statement was accompanied by a

Second, while Voutour actually decided who would be promoted, Filicetti averred that his declaration was "based upon my *personal knowledge and/or information I acquired in the performance of my duties as Undersheriff and Sheriff*."  Docket Item 69 at ¶ 1 (emphasis added).  Declarations based on personal knowledge gained during employment are admissible evidence.  *See, e.g.*, *Giallanzo v. City of New York*, 630 F. Supp. 3d 439, 458 (S.D.N.Y. 2022) (collecting cases); *see also Searles v. First Fortis Life Ins.*, 98 F. Supp. 2d 456, 461 (S.D.N.Y. 2000) ("An affiant's conclusions based on personal observations over time, however, may constitute personal knowledge . . . . The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (internal footnotes omitted)).

Here, Filicetti served as undersheriff and participated in the interview process for the new lieutenant positions.  Docket Item 69 at ¶¶ 1, 29.  Based on that, a reasonable juror "could believe [that he] had personal knowledge" of the events being described. *See Searles*, 98 F. Supp. 2d at 461; *see also Cukar v. Compass Grp., USA, Inc.*, 2024 WL 917612, at *4, n. 2 (S.D.N.Y. Mar. 4, 2024) (admitting affidavit based on affiant's "first-hand experience and role in the job" which "support his competence to speak to the matters in his affidavit"); *Giallanzo*, 630 F. Supp. 3d at 458 (noting that declarant's "senior position . . . was enough of a basis on which, for purposes of summary judgment, to conclude that he had the familiarity with quotidian payroll records of his agency to explain what the codes thereon signified").  Because Filicetti's statements are based on his experience and knowledge gained on the job, they are admissible

---

record cite supporting it.  So the failure to attach a cite to paragraph 51 clearly was a simple mistake, especially when Judge Pederson found a direct cite that the Defendants easily could have included.

evidence in support of the Defendants' motion for summary judgment.  Therefore, Judge Pedersen properly relied on the statements in Filicetti's declaration.

Haner also complains that Filicetti's declaration is self-serving because he is a party in this action by virtue of his current position as Sheriff.  Docket Item 119 at 6-7.  But courts need not—indeed, they cannot—simply ignore non-conclusory statements in a declaration because they are "self-serving."  *See Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998).  Haner also argues that Judge Pedersen unfairly credited Filicetti's self-serving statements over her deposition testimony and her declaration, such that "the Magistrate Judge has made an impermissible finding of fact in favor of the moving party."  Docket Item 119 at 6-7.  But as detailed above, Filicetti's statements are based on his personal knowledge, while Haner's statements are not.

Haner further argues that discrimination can be inferred based on her firsthand observations during her interview: that one interviewer was "picking at his fingernails and acting bored" and that another was "sighing and huffing and puffing."  Docket Item 113 at 13 n.5; Docket Item 78 at ¶¶ 40-44.  But as Judge Pedersen correctly found, that is not enough to raise a question of material fact as to discrimination.  "[E]ven if sincerely held, a plaintiff's 'feelings and perceptions of being discriminated against' do not provide a basis on which a reasonable jury can ground a verdict."  *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 75 (2d Cir. 2015) (quoting *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999)).  So even accepting Haner's observations as true, those observations would not allow a reasonable juror to find that the interviewers acted out of a discriminatory motive.

Jail Chief Kevin Payne's notes, taken during Haner's interview, likewise do not raise an inference of discriminatory animus. Payne's notes describe Haner as a "sub-standard employee" and "not physically fit"; they also say that Payne was "[d]oubtful staff would respect her." Docket Item 103-12. Haner says that those notes conflict with her 2015 performance review, when she received good marks for, among other things, having good control over inmates, not complaining about her assignments, and being familiar with the jail's rules for inmate conduct. Docket Item 81-9. Payne's notes also include "uniform?," which Haner argues is a negative comment that was based on her interviewing in business clothes because she was two months pregnant and did not fit into her dress uniform. Docket Item 78 at ¶¶ 31, 33. Haner argues that Judge Pedersen erred by not finding that Payne's comments were "coded language expressing his anti-female bias." Docket Item 113 at 12.

But this Court agrees with Judge Pedersen that Payne's notes do not reflect any coded bias. *See, e.g.*, *Weinstock v. Columbia Univ.*, 224 F.3d 33, 44 (2d Cir. 2000) (use of words such as "nice" and "nurturing" to describe plaintiff "are simply not qualities that are stereotypically female" and thus do not support an inference of discriminatory animus). The fact that Payne's notes reflect a different view of Haner's abilities than her performance evaluation does not, without more, suggest anything about gender, let alone a gender bias. And while Haner says that she had permission not to wear a uniform to her interview because she was pregnant, Docket Item 78 at ¶¶ 33, 35-36, there is no evidence that Payne knew that. So there is no reason to believe that Payne's note of "uniform?" suggests a gender bias.

Haner also relies on a question asked of her husband, Correction Officer Jeffrey Newman, as evidence of discriminatory bias.  Newman—who served as union president for the correction officers—attended a meeting in December 2015 regarding the placement of the lieutenant positions in the union.  Docket Item 79 at ¶ 20.  Among those at the meeting were then-Undersheriff Filicetti, Chief Payne, Deputy Chief Engert, and members of the human resources department.  *Id.*  During the meeting, Newman was asked what his and Haner's plans were for daycare if Haner changed her work shift.  *Id.* at ¶ 21.  Haner asserts that "[t]he question would have been direct evidence of gender-based discrimination if posed to [her] during her interview."  Docket Item 113 at 10.  And because the question was posed to her husband around the time of the interviews for the lieutenant position, Haner argues that it "constituted clear evidence" of discriminatory animus.  *Id.* at 10-11.

Comments about a plaintiff's "inability to combine work and motherhood" can support a finding of discriminatory animus when the comments (1) are "made repeatedly," (2) draw "a direct link between gender stereotypes and the [adverse job action]," and (3) are "made by supervisors who played a substantial role in the [adverse job] decision."  *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 125 n.12 (2d Cir. 2004).  But here, nothing in the record would allow a reasonable juror to draw the inference that the question regarding daycare demonstrates discriminatory animus.  The question was asked only once, and because it asked about both parents' plans, it did not suggest—either directly or indirectly—that Haner, as a woman, was responsible for providing childcare.  *See, e.g.*, *Keller v. Great Lakes Collection Bureau*, 2005 WL 2406002, at * 6 (W.D.N.Y. Sept. 29, 2005) (in case where plaintiff alleged that

she was discharged based on her gender and pregnancy, noting that question about "whether plaintiff's husband could pick up her children[] was not unreasonable and is not evidence of discrimination[] as plaintiff's husband usually picked up their children from day care").  Moreover, Newman does not say who asked the question, and so there is no indication that the questioner "played a substantial role in the decision" not to promote Haner.  *See Back*, 365 F.3d at 125 n.12.

Haner next argues that the jail's offer of a promotion to another woman, Tammy Williams, actually evidences discriminatory animus against women.  Williams, a sergeant, was offered the 2016 promotion to lieutenant but declined.  Docket Item 76 at ¶ 48.  Haner says that the offer was conditioned on Williams's agreeing to work the midnight shift.  Docket Item 113 at 13; Docket Item 79 at ¶¶ 52-55.  Haner also points to Chief Jail Administrator Daniel Greenwald's testimony that Williams had indicated in her application that she could not work the midnight shift for personal reasons.  Docket Item 113 at 13; *see also* Docket Item 80-2 at 11:12-17.  So, Haner says, the offer to promote Williams was not genuine, suggesting that it was made to cover up gender bias.  *See* Docket Item 113 at 13.  But the Defendants also offered Williams a promotion to lieutenant in 2018 which Williams again declined, Docket Item 69-9, and Haner offers no reason why that the second offer to promote was made in bad faith.  And it is hard to fathom how offering two promotions to a woman evidences gender bias against women.

Finally, Haner objects that Judge Pedersen "entirely ignored" the report of her expert witness, Dr. Frederick Floss.  Docket Item 113 at 14.  That report includes a statistical analysis purportedly demonstrating that the jail's failure to promote women to lieutenant must be the result of gender discrimination.  Docket Item 80-3 at 2-3.  More

15

specifically, Dr. Floss posits that based on his analysis, "after adjusting for years of service, test score[,] and grade (rank)[,] there is still discrimination against female officers which cannot be explained." *Id.*  He concludes that "[t]he results of this analysis is [sic] that discrimination played a part in no female officers being promoted to lieutenant with a reasonable degree of statistical and economic certainty." *Id.* at 3.

The Defendants assert that Judge Pedersen did not mention the expert report because it "is fundamentally flawed" in that "it fails to account for the undisputed facts that two out of three women on the eligibility list were offered a promotion or provisionally appointed to Lieutenant." Docket Item 118 at 14.  But because the R&R is silent on the subject, that assertion is simply conjecture.

Nevertheless, the Court agrees with the Defendants that the report's failure to address the Defendants' attempts to promote two women and to discuss how that affects the statistical analysis is troubling.  Dr. Floss states that based on the ratio of male to female officers generally, the "expected number of female officers promoted to lieutenant would be 1.65."  Docket Item 80-3 at 2.  If one looks to the ratio of male to female officers sitting for the civil service exam, Dr. Floss says, "the expected number of [female] officers picked would be 1.50."  *Id.*  But the Defendants attempted to promote two women—seemingly on track with Dr. Floss's expected numbers—and the report does not even mention those unsuccessful promotions, let alone explain how they are consistent with the conclusion that not promoting women was the result of discrimination.

"Statistical analysis is rarely sufficient to defeat summary judgment.  Although a generalized statistical analysis . . . can provide circumstantial evidence of an inference

of discrimination in support of a *prima facie* case, as a matter of law, it is not sufficient to establish that the Defendant's legitimate business rationale . . . is false, or that [the plaintiff's membership in a protected class] was the real reason for [the employment decision]." *Vidal v. Metro-N. Commuter R.R. Co.*, 2014 WL 3868027, at *20 (D. Conn. Aug. 6, 2014) (quoting *Vuona v. Merrill Lynch & Co.*, 919 F. Supp. 2d 359, 374 (S.D.N.Y. 2013)); *see also Robinson v. Metro-N. Commuter R.R. Co.*, 1998 WL 17742, at *9 (S.D.N.Y. Jan. 16, 1998) ("While statistical evidence may sometimes enable a plaintiff to carry its modest burden of creating a prima facie case, the Court is aware of no case where generalized statistical evidence has been held sufficient to refute, for summary judgment purposes, a defendant's particularized evidentiary showing of a nondiscriminatory explanation for a particular act complained of, in the absence of any other material, admissible evidence of discrimination." (internal citations omitted)).  And that is especially true here, given Dr. Floss's failure to address the attempted promotions as noted above.

"Further, courts in this Circuit have held consistently that statistics are unreliable indicators of discrimination where, as here, they were calculated from a small set of data." *Vidal*, 2014 WL 3868027, at *20; *see also EEOC v. Joint Apprenticeship Comm. of Joint Indus. Bd. of Elec. Indus.*, 186 F.3d 110, 119 (2d Cir. 1999) ("[S]uch a small sample would tend to produce inherently unreliable results."); *Waisome v. Port Auth. of N.Y. & N.J.*, 948 F.2d 1370, 1379 (2d Cir. 1991) ("[W]here statistics are based on a relatively small number of occurrences, the presence or absence of statistical significance is not a reliable indicator of disparate impact.  For smaller samples the value of the standard deviation rule drops off . . . . It is for this reason that, in cases

involving small or marginal samples, other indicia raising an inference of discrimination must be examined.").

Finally, Dr. Floss's report provides scant explanation to support its conclusions, rendering it of little use to the Court in deciding the current motion for summary judgment.  *See* Docket Item 80-3.  For all those reasons, the Floss report does not raise a question of fact sufficient to defeat the Defendants' motion for summary judgment.[3]

In sum, this Court agrees with Judge Pederson that Haner failed to establish a *prima facie* case of discrimination with respect to the 2016 promotion and that even if she did, the Defendants offered a nondiscriminatory reason for not promoting her and Haner failed to raise a question of fact as to pretext.

## B.    Failure to Promote in 2018

In 2018, the Defendants first offered the only opening for the lieutenant position to the person on the top of the civil service list—a male—who declined.  Docket Item 66-2 at ¶¶ 55, 56; Docket Item 76 at ¶¶ 55, 56.  Three people were tied for second place: Williams and two male officers.  Docket Item 66-2 at ¶ 57; Docket Item 76 at ¶ 57.  The Defendants offered the position to Williams because her supervisory experience made her the best candidate of the three, but she also declined.  Docket Item 66-2 at ¶ 58;

---

[3] In addition, the Floss report is not sworn, and "[c]ourts in this Circuit have uniformly held that unsworn expert reports do not satisfy the admissibility requirements of [Federal Rule of Civil Procedure] 56(e), and cannot be used to defeat a summary judgment motion without additional affidavit support."  *Scalercio-Isenberg v. Port Auth. of N.Y. & N.J.*, 2019 WL 13111939, at *1 (S.D.N.Y. Sept. 6, 2019) (alteration in original) (quoting *Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 352 (S.D.N.Y. 2005)); *see also Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005) (explaining that, as a general matter, unsworn expert statements are inadmissible hearsay on a motion for summary judgment).  But because the Court finds that the report fails to raise a question of material fact, it need not and does not reach this issue.

*see* Docket Item 76 at ¶ 58.  After a review of their qualifications, neither of the men who tied with Williams were offered the promotion.  Docket Item 66-2 at ¶ 59; Docket Item 76 at ¶ 59.

Haner and Joseph Moll, a sergeant, were tied and slotted next.  Docket Item 66-2 at ¶ 60; Docket Item 76 at ¶ 60.  According to the Defendants, Moll was selected over Haner based on Moll's work performance and, "more importantly," because "he had supervisory experience."  Docket Item 66-2 at ¶ 62.  In his affidavit in support of the Defendants' motion for summary judgement, Filicetti averred that among the criteria for promotion in 2016 and 2018 was "prior experience at the jail in various positions."  *Id.* at ¶ 51.

In response, Haner argued to Judge Pederson that "supervisory experience" was a new criterion for promotion, suggesting that it was used as pretext for not choosing her.  Docket Item 113 at 14-15.  But Judge Pedersen rejected that argument, finding that the criterion of "prior experience at the jail in various positions" had been in place for the earlier promotion, that it necessarily "includ[ed] prior supervisory experience," and that it therefore was not new.  Docket Item 110 at 51.

In her objections, Haner argues that Judge Pedersen's reading of the criteria drew an improper inference in the Defendants' favor.  Docket Item 113 at 14-15.  This Court disagrees.  As Judge Pederson concluded, "prior experience at the jail in various positions" necessarily includes "prior supervisory experience" at the jail, and no reasonable juror could conclude otherwise. So the criterion of prior supervisory experience was not a new one trumped up to deny Haner a promotion because of her gender.

Moreover, Haner's argument that she had supervisory experience comparable to Moll's does not pass muster.  As Judge Pedersen aptly observed, Docket Item 110 at 52, unlike Moll's recent supervisory experience at the jail, *see* Docket Item 69 at ¶¶ 50-51, Haner's prior supervisory experience took place decades before in a non-jail setting.  And because no reasonable juror could find that Haner's supervisory experience was comparable—let alone superior—to Moll's, no reasonable juror could infer that the Defendants acted with discriminatory animus when they did not promote Haner to lieutenant in 2018.

### C.   Failure to Promote in 2019

The Defendants promoted Jason Kobrin to lieutenant in 2019.  *See* Docket Item 76 at ¶ 64; Docket Item 77 at 15.  As Haner concedes, she did not include the 2019 promotion in her third amended complaint.[4]  Docket Item 113 at 16.  Nevertheless, Haner argues in her objections that Judge Pedersen failed to "consider the inference that the 2019 promotion is indicative of [the] Defendants' pattern of refusing to appoint qualified women to permanent positions as Corrections Lieutenant."  *Id.*

But Haner cites no evidence in the record regarding Kobrin's qualifications, nor does she even address whether any other candidates were considered for the position.  *See* Docket Item 76 at ¶ 64; Docket Item 77 at 17-18; Docket Item 113 at 15-16.  For that reason, this Court agrees with Judge Pederson that it "cannot determine whether Jason Kobrin's promotion demonstrated an unlawful discriminatory animus towards

---

[4] Haner says that if her claims proceed to trial, she will move to amend to add this claim.  Docket 113 at 16.

women."  Docket Item 110 at 52 n.13.  And Haner therefore has failed to establish an inference of discrimination.

### D.    Failure to Promote in 2020

Because the eligibility list that governed the 2016, 2018, and 2019 promotions expired, *see* Docket Item 69-4, another examination was administered in 2020, *see* Docket Item 70-1.  Haner scored highest on that exam, *id.*, but she still was not offered the promotion.  In opposition to the Defendants' summary judgment motion, Haner argued that by passing her over for the lieutenant position in 2020, the Defendants again discriminated against her based on her gender.  Docket 113 at 16-18.

For two reasons, Judge Pedersen found that Haner failed to establish that the Defendants acted with discriminatory animus and therefore did not state a *prima facie* case of discrimination.  First, he found that Haner offered no evidence that Filicetti, the new sheriff who decided the 2020 promotion, discriminated on the basis of gender.  *See* Docket Item 110 at 53.  Second, he noted that the position was provisionally offered to Denise Robinson, a woman who had not scored well enough on the exam to be offered the position permanently, and that there was therefore no basis for inferring gender discrimination.  *See id*. at 52-53.  Judge Pedersen also found that even if Haner had made out a *prima facie* case, the Defendants offered a nondiscriminatory reason for not promoting her:  In 2019, Haner had received a 10-day suspension without pay as part of a settlement agreement that resolved four disciplinary charges against her.  *Id.* at 53-54; *see also* Docket Item 66-2 at ¶¶ 70-71; Docket Item 76 at ¶¶ 70-71.

Haner objects to Judge Pedersen's finding that she failed to raise a question of material fact as to whether the Defendants' reason was pretextual.[5]  And she argues that the Defendants' reliance on the discipline imposed is indeed pretextual because the men who were promoted also had been disciplined.  Docket Item 113 at 18.

"A showing of disparate treatment—that is, a showing that an employer treated [the] plaintiff 'less favorably than a similarly situated employee outside his protected group'—is a recognized method of raising an inference of discrimination for the purposes of making out a prima facie case."  *Ruiz v. County of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010) (quoting *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)).  "An employee is similarly situated to co-employees if they were (1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.'"  *Id*. at 493-94 (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)).

"[T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical."  *Id*. at 494 (quoting *Graham*, 230 F.3d at 40).  "In other words, the comparator must be similarly situated to the plaintiff 'in all material respects.'"  *Id*. (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)).  "[W]hether other employees are similarly situated is a factual issue that should be submitted to a jury, but '[t]his rule is not absolute . . . and a court can properly grant

---

[5] Other than raising general objections about the R&R's resolving issues of fact and drawing inferences against her, Haner does not challenge Judge Pederson's conclusion that she failed to make out a *prima facie* case as to the 2020 promotion. Docket 113 at 16-18.  For that reason, this Court need not even address her argument about pretext.  The Court nevertheless does so in the interest of completeness.

summary judgment where it is clear that no reasonable jury could find the similarly situated prong met.'" *Sweeney v. Leone*, 2006 WL 2246372, at *13 (D. Conn. July 31, 2006) (quoting *Harlen Assoc. v. Incorporated Village of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001)); *see also Lugo v. City of New York*, 518 F. App'x 28, 30 (2d Cir. 2013) (summary order) (finding that plaintiff had not provided "any information from which a reasonable jury could conclude that the officers referenced were similarly situated").

Haner says that Kevin Austin was promoted to lieutenant in 2020 after he had been disciplined, and she argues that the reason given for not promoting her—her 10-day suspension without pay—therefore was a pretext. Docket Item 113 at 17-18. And Haner submitted counseling memoranda issued to Austin in support of her argument. Docket Item 79 at ¶ 45; Docket Item 103-3; Docket Item 103-7. But under the collective bargaining agreement, discipline may be imposed only after formal charges are brought, *see* Docket Item 94-5, and there is no evidence that charges were ever brought against Austin. Indeed, Haner concedes that Austin "was not formally disciplined" for "abuse of leave time." Docket Item 77 at 19.

Along the same lines, Haner says that Moll was promoted to lieutenant in 2018, and Kobrin in 2019, despite both having been disciplined, *id.* at 20; based on that, she argues that those promotions likewise show that the reason given for not promoting her was a pretext, Docket Item 113 at 17-18. But as Judge Pedersen noted, the record shows only that Moll was the subject of a disciplinary proceeding, and without more, that is insufficient to allow a reasonable juror to conclude that Moll and Haner were similarly situated. Docket Item 110 at 55-56. As to Kobrin, Haner relies on Newman's declaration that "Officer Kobrin was among several officers who," with respect to an

incident in July 2011, "received written reprimands, but were not suspended." *See* Docket Item 79 at ¶¶ 84-85.  Because he was not suspended, Kobrin is not similarly situated to Haner, who was suspended.

Haner also objects to (1) Judge Pedersen's characterizing the settlement agreement as "discipline," (2) his refusal to credit her testimony that she was told the settlement agreement would not be used against her in promotions, and (3) his not taking into consideration whether the penalty imposed on her was greater than penalties imposed on men in similar situations.  Docket Item 113 at 17-18.  But each of those objections misses the mark.

Judge Pedersen's characterization of the suspension as "discipline" does not materially affect the analysis:  None of Haner's comparators were suspended, so—discipline or not—the fact that the lesser penalties imposed on Austin and Kobrin did not impede their promotions does not raise a question of material fact as to whether Defendants' reasons were pretextual.  Nor did Judge Pedersen err in not crediting Haner's statement that she was told that the settlement would not count against her in considering promotions.  Haner does not identify who made such a statement or when it was made; even more significantly, the settlement agreement does not reflect any such understanding, and it specifically provides that "[t]his represents the entire agreement of the parties."  Docket Item 67-4.  Finally, there simply is no evidence in the record establishing that Haner was treated differently in disciplinary proceedings based on her gender.  For example, the record does not include specifics about the incident in which Kobrin was involved, nor does it indicate whether the other officers who were given written reprimands as a result of the failure-to-check incident were male or female.

Haner also argues that the R&R failed to appreciate that discrimination was inherent in the fact that charges were brought against her in the first place because the misconduct that led to the four charges against her was "not the subject of discipline when engaged in by other officers."  Docket Item 113 at 17.  In other words, Haner says that she was singled out for discipline because she is a woman and that men who did what she did were not disciplined.  *Id.* at 17-18.

But Haner again has not shown that any of her comparators are similarly situated.  Indeed, the underlying conduct that Haner cites does not seem similar at all. As set out above, Austin's attendance issues involved being late several times and once calling in sick with insufficient notice; Kobrin was disciplined, apparently along with others, for not checking an occupied cell and allowing an inmate to be unsecured for roughly 42 hours.  In contrast, the notice of discipline charged Haner with (1) insubordination when she was ordered to report for scheduled duty on August 9, 2018, and simply failed to do so; (2) behaving in a manner that brings discredit, disrepute, and embarrassment to the Sheriff's office based on an incident in May 2018 when she allegedly honked her horn at a vehicle and gave the driver the middle finger; (3) not being truthful based on three alleged false statements given to law enforcement personnel; and (4) abuse of absence of duty/sick time.  Docket Item 76 at ¶¶ 152-157. She eventually entered into a settlement agreement with the Defendants and her union, whereby charges two and three were withdrawn, she did not have to admit guilt, and she chose a 10-day suspension without pay as her penalty.  *See* Docket Item 67-4; Docket Item 78 at ¶¶ 67-68.  So the two sets of conduct are apples and oranges.

In sum, Haner has not made out a *prima facie* case of discrimination; but even if she had done so, the Defendants still would be entitled to summary judgment because they have proffered plausible non-pretextual reasons why she was not promoted. For all the above reasons, this Court adopts Judge Pedersen's recommendation and grants the Defendants' motion for summary judgment on Haner's claims alleging that the Defendants failed to promote her.

## II.   PREGNANCY RESTRICTIONS

Haner also objects to Judge Pedersen's recommendation that the Court grant the Defendants' motion for summary judgment on Haner's claim that the Defendants failed to accommodate her pregnancy restrictions. More specifically, she argues that Judge Pedersen improperly drew inferences in favor of the Defendants.

"[A] plaintiff alleging pregnancy discrimination based on the denial of an accommodation must show 'that she belongs to the protected class, that she sought an accommodation, that the employer did not accommodate her, and that the employer did accommodate others 'similar in their ability or inability to work.'" *D'Cunha v. Northwell Health Sys.*, 2023 WL 7986441, at *3 (2d Cir. Nov. 17, 2023) (summary order) (quoting *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 229 (2015)). The defendant then may offer "legitimate, nondiscriminatory" reasons for denying the requested accommodation. *See Young*, 575 U.S. at 229 (quoting *McDonnell Douglas*, 411 U.S. at 802). In turn, the plaintiff may show that the defendant's "proffered reasons are in fact pretextual." *Id*.

Until January 2012, jail policy allowed pregnant correction officers the "option to be assigned to a duty station that entail[ed] no contact with the inmate population (ex. [sic] Records, Control desk, etc.)." Docket Item 69-11 at 1. That policy then was

rescinded and replaced with a directive from the sheriff simply stating that "[m]edical and health related matters will continue to be managed under the applicable legal statute(s), rule, regulation and/or collective bargaining agreement language or combination thereof, on a case specific basis."  Docket Item 69-12.

On January 27, 2016, Haner had "pregnancy complications," and her doctor therefore placed restrictions on the type of work she could perform.  Docket Item 67-8.  Specifically, Haner's limitations included "no pushing, no pulling[, and] no lifting more than 5 lbs."; "elevate feet, restroom as needed"; "no more than 8.25 work hours"; "dim lights as needed"; and "monitor BP as needed."  *Id.*  Haner also was to have "no contact [with] inmates" and was "not to make physical rounds."  *Id.*  The note restricted her to a "desk job only."  *Id.*

On January 28, 2016, Engert emailed Haner, requesting clarification regarding several of the restrictions.  Docket Item 67-9.  Engert noted that "[e]very position in the jail necessarily entails some level of inmate contact, although the nature and duration can vary."  *Id.*

The next day, Haner's doctor provided an updated note that revised her restrictions to "pushing, pulling[,] or lifting no more than 5 lbs"; "8.25 work hours—may work extra if [patient] is able"; and "elevate feet [and] restroom as needed."  Docket Item 67-10.  Instead of restricting all inmate contact, the updated note provided that Haner was "not to work inmate housing.  Able to work control room, answer phones, watch[] cameras[,] or paperwork."  *Id.*

Haner does not dispute the fact that after consulting with her doctors, she told Engert that "she was open to working Central Control, Rover, and possibly Recreation

with some modifications."  Docket Item 76 at ¶¶ 87-88.  In fact, Haner accepted an

assignment as a "Rover," a post that, among other duties, involved responding to

emergencies as well as escorting and supervising inmates.  Docket Item 78 at ¶ 88;

Docket Item 80-2 at 24-25.

On March 2, 2016, following a diagnosis of cervical cancer, Haner presented a

doctor's note restricting her to a desk job with no inmate contact, but the Defendants did

not provide that accommodation and instead placed her on a leave of absence.  Docket

Item 78 at ¶¶ 101-103.  The exact date Haner's leave began is unclear, but the parties

agree that her leave ran through June 2016, when her child was born.  *Id.* at ¶ 126;

Docket Item 74 at ¶ 12.  At that point, she went on maternity leave, which ran through

September 2016.  Docket Item 74 at ¶ 12; Docket Item 76 at ¶¶ 95-97.

Haner argues that the Defendants twice failed to accommodate her pregnancy

restrictions: first, by not accommodating her "no inmate contact" restriction set out in the

original note of January 27, 2016; then, by not accommodating that same restriction in

the note of March 2, 2016, and forcing her to take a leave of absence.  Docket Item 113

at 18-19.  She suggests that on both occasions, the Defendants' reason for not

accommodating her need for a job with no inmate contact—that there was no such

job—was pretextual, and she notes that under the previous policy, Central Control was

considered a "no contact" job.  *Id.*  She relies on Greenwald's testimony to support that

contention:

> Q:      Okay.  You see that the introduction says that the policy is to allow
> a pregnant corrections officer a post that entails no direct contact with the
> inmate population?
>
> A:      I do.
>
> . . .

28

Q:      Do you know what posts were entailed in that at the time?

A:      A post that has no direct contact with the population?  They would be referring to actual duty post.  I would say Central Control, but that doesn't guarantee no inmate contact.

Q:      . . . I'm assuming then that Central Control has very limited contact; is that fair?

A:      That's fair.

Docket Item 80-2 at 22-23.

Judge Pederson found that Greenwald "never testified that the position of Central Control had 'no inmate contact'" and that Haner "provided no evidence that there existed any potential accommodation that would have allowed her to continue to work, regardless of the form such an accommodation would have taken."  Docket Item 110 at 71 & n.19.  In her objections, Haner says that Judge Pederson "focused on the literal language of the restrictions, holding that she had not established that there were posts within the [j]ail with 'no inmate contact.'"  Docket Item 113 at 19.  That "focus on the literal language," Haner argues, "obscures the Defendants' failure to provide the accommodation [her] doctor requested from January 27 to the beginning of March."  *Id.* And Haner says that Greenwald's deposition testimony establishes that under the previous policy, "Central Control was understood to be a duty post that did not involve inmate contact," so that the "Defendant's refusal to assign [Haner] to that post when she first presented a doctor's note in January 2016[] is incomprehensible except as evidence of impermissible discrimination."  Docket Item 119 at 10.

Haner's argument that the Defendants failed to accommodate her pregnancy when they assigned her to Rover instead of the Central Control job she wanted in January and early February 2016 is unpersuasive.  Haner may have preferred an

29

assignment to Central Control, but the law does not require an employee's preferred accommodation so long as the accommodation provided was reasonable and effective. *See Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (noting that "employers are not required to provide a perfect accommodation or the very accommodation most strongly preferred by the employee"); *see also, e.g.*, 29 C.F.R. § 1630 et seq. ("[Although] the preference of the individual with a disability should be given primary consideration[,] . . . the employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide."). Haner does not dispute that after consulting with her doctors, she told Engert that "she was open to working Central Control, Rover, and possibly Recreation with some modifications." Docket Item 76 at ¶¶ 87-88. And that concession is fatal to her claims: She cannot raise a question of fact by arguing that the Rover position was incompatible with her pregnancy restrictions when after speaking with her doctors she told Engert that she was able to work as a Rover.

Equally unpersuasive is Haner's argument that the Defendants' reason for not assigning her to a job with no inmate contract in response to the January 27 or the March 2 notes is pretextual. The Defendants proffered evidence that no post at the jail satisfied that restriction. Docket Item 66-2 at ¶¶ 80-81. Haner argues that because under the previous policy Central Control was considered a "no direct contact" assignment she should have been assigned to that position. Docket Item 119 at 10. But an outdated policy says nothing about current duties, and Haner cites nothing in the record suggesting that the duties of Central Control remained the same after the policy

changed.  Moreover, Greenwald testified that Central Control involved "very limited

contact" with inmates, but did not "guarantee no inmate contact."  Docket Item 80-2 at

23.  Likewise, Engert's January 28 email to Haner noted that "[e]very position in the jail

necessarily entails some level of inmate contact, although the nature and duration can

vary."  Docket Item 67-9.  Therefore, and because the doctor's restrictions required no

inmate contact, the leave of absence given Haner was the best the jail could do.

In sum, Haner was accommodated by a transfer to the position of Rover and

then with a leave of absence.  And even if that were not so, Haner does not cite any

record evidence that there was an alternative position at the jail that satisfied the no-

contact restriction.  This Court therefore accepts Judge Pedersen's recommendation to

grant the Defendants' motion for summary judgment on Haner's failure to accommodate

claim.[6]

## III.    LACATATION BREAKS

Judge Pedersen recommended dismissing Haner's claim of disparate treatment

related to lactation breaks because he found that Haner failed to demonstrate that she

suffered an adverse employment action.  Docket Item 110 at 67-68.  More specifically,

Judge Pederson found that Haner's complaints regarding "(1) the location of the room

---

[6] In her response to the Defendants' Statement of Facts, Haner challenged the Defendants' statement that positions with no inmate contact do not exist at the jail, asserting that Corrections Officer Atkins was given a position with no inmate contact as of July 2016 and citing "Exhibit 10, Pltf. 759" in support of that assertion.  Docket Item 76 at ¶ 81; Docket Item 80-10.  But as Judge Pedersen noted, "a review of Exhibit 10 reveals that it is simply handwritten notes on an otherwise blank piece of paper." Docket Item 110 at 71 n.18.  Haner submitted the notes without indicating who wrote the notes, why they were written, or anything else that might make them admissible.  *Id.* Judge Pederson therefore declined to consider the notes, *id.*, and so does this Court.

provided to her for such breaks, (2) that she was not provided a key for that room, (3) that she was not permitted to store her equipment in that room, and (4) that she could not be flexible with her breaks because she was dependent on others to cover her break times and to unlock the door to the room provided for lactation" were "inconveniences" that did not rise to the level of an adverse employment action. *Id.*

But that misses Haner's allegation that she lost pay because of the Defendants' policy forcing her to clock out during lactation breaks even though she remained on call. Docket Item 113 at 19-20.  The Second Circuit "define[s] adverse employment action broadly to include 'discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand.'"  *Lovejoy-Wilson v. NOCO Motor Fuel*, 263 F.3d 208, 223 (2d Cir. 2001) (citation omitted).  Therefore, by demonstrating that she lost pay when she was forced to clock out, Haner has established an adverse employment action.

Haner also has raised an inference of discriminatory animus.  More specifically, she notes that correction officers who remained on call during meal and other breaks were not required to clock out, Docket Item 76 at ¶¶ 104, 106, 110, while she was required both to remain on call and to clock out during lactation breaks, Docket Item 78 at ¶ 137.  So contrary to Judge Pederson's conclusion, Haner indeed made out a *prima facie* case of disparate treatment.

But that does not end the inquiry because the Defendants proffered a nondiscriminatory reason for not paying for lactation breaks: the law does not require

them to. *See* 29 U.S.C. § 207.[7]  So the question is whether that reason is legitimate and non-pretextual.

In her objections, Haner argues that the proffered reason is pretextual because the law does not require other types of breaks—breaks at the jail that are with pay—to be paid.  Docket Item 113 at 20.  But that is not entirely correct:  Federal regulations do require short breaks of 5 to 20 minutes to be compensated.  *See* 29 C.F.R. § 785.15.  So that argument misses the mark.

Haner's alternative argument as to pretext is more persuasive.  She says that because she was required to be on call during her lactation breaks, she should have been paid for those breaks in the same way that other correction officers were paid for breaks whenever they remained on call.  Docket Item 113 at 20.  In other words, Haner says that even though federal regulations do not require pay for lactation breaks, if an employer requires nursing women to remain on call during such breaks, they must be treated in the same way as other breaks requiring workers to remain on call.  Haner has a point.

There is no dispute that (1) all jail "employees are offered meal breaks" which may be "used for eating, smoking, and using the restroom" while on duty, Docket Item 76 at ¶¶ 104-05, and (2) jail "employees are not required to clock out for meal breaks[] because they [are] expected to respond to calls and return to work, if necessary," *id.* at ¶ 106.  Likewise, it is undisputed that while there is no "policy governing smoking

---

[7] The Providing Urgent Maternal Protections for Nursing Mothers Act ("PUMP Act") went into effect January 1, 2023, and replaced the breastfeeding provisions in 29 U.S.C. § 207.  The PUMP Act expands the protections provided to nursing women.  29 U.S.C. § 218d.

breaks," "[s]ome Corrections Officers take smoking breaks from time to time while on duty" but "are expected to respond to calls and return to work, as needed, during these breaks." *Id*. at ¶¶ 107-10.

Haner says that she "was required to respond to radio calls while on lactation breaks as are employees on paid smoking, bathroom[,] and food breaks." Docket Item 78 at ¶ 137. And the Defendants do not cite any evidence in the record disputing that Haner remained on call; on the contrary, they do not seem to dispute Haner's assertion that she was called back to duty while on lactation breaks "a handful of times." *See* Docket Item 118 at 24 n.11. So this Court agrees with Haner that the R&R overlooked the import of Haner's contention that she was required to remain on call during her lactation breaks, which were treated differently than other on-call breaks.

The Defendants note that by her own admission, Haner seldom was called away from her lactation breaks, and they say that "there is no evidence that she was not paid for any working time." Docket Item 118 at 24 n.11. But that misses the point. Haner argues that when employees on break remain on call, that time is counted as work time and compensated accordingly—except for lactation breaks. Docket Item 113 at 19-20. Stated another way, Haner argues that by forcing her to clock out for lactation breaks while requiring her to remain on call, the Defendants were not paying for her on-call time the way they paid for other employees' on-call time during breaks. And because nursing women are the only employees who take lactation breaks, Haner says, that creates a question of fact as to gender-based discrimination.

This Court agrees. In their statement of undisputed material facts, the Defendants say that the reason corrections officers are not required to clock out for

meal breaks is "because they [are] expected to respond to calls and return to work [during those breaks], if necessary."   Docket Item 66-2 at ¶ 106.  Along the same lines, the Defendants say that corrections officers are not required to clock out for smoking breaks because they "are expected to respond to calls and return to work, as needed, during these breaks."   *Id.* at ¶ 110.  So if meal and smoking breaks are compensated because employees remain on call during them, then a reasonable juror could infer that lactation breaks should likewise be compensable when the employee remains on call and that the failure to pay for lactation breaks evidences an animus against women— and more particularly, nursing women.  *See, e.g.*, *EEOC v. Vamco Sheet Metals, Inc.*, 2014 WL 2619812, at * 6 (S.D.N.Y. June 5, 2014) ("Where a plaintiff's claim focuses on adverse employment actions or conditions relating to her lactation breaks[,] . . . an employer may be liable under Title VII.").

What is more, Labor Department guidance provides that lactation breaks must be handled in the same way as other breaks.  *See* Reasonable Break Time for Nursing Mothers, 75 Fed. Reg. 80073, 80078 (Dec. 21, 2010) ("If an employer treats employees who take breaks to express breast milk differently than employees who take breaks for other personal reasons, the nursing employee may have a claim for disparate treatment under Title VII.").[8]  Therefore, while an employer may be required to pay an employee

---

[8] In fact, the Labor Department reads Section 207—the statute providing that lactation breaks can be without pay—as requiring employees to be paid for those breaks if they remain on call.  *See, e.g.*, Reasonable Break Time for Nursing Mothers, 75 Fed. Reg. at 80075 (noting that pursuant to the Fair Labor Standards Act, "if a nursing employee is not completely relieved from duty during a break to express breast milk, the time must be compensated as work time.").  And that is a commonsense reading of the rule:  Just as an employee is not entitled to additional paid breaks to accommodate a lactation schedule, an employer is not entitled to take advantage of an employee's unpaid time by requiring her to remain on call.  So a reasonable juror could

for time on short breaks, 29 C.F.R. 785.15, and while an employer may not be required to pay a nursing woman for time on lactation breaks, 29 U.S.C. § 207, that does not give an employer license to discriminate against nursing women by, for example, requiring them to remain on call during lactation breaks and not paying them in the same way that other employees on similar breaks are paid. Therefore, because employees are paid for smoking and meal breaks when they remain on call, there is a material question of fact as to why Haner was not paid for lactation breaks even though she remained on call.

The Defendants also argue that Haner "does not claim that she or any other female employee was barred from taking . . . short breaks or a paid lunch break on the clock." Docket Item 118 at 24. Again, that misses the point. Haner is not saying that women who take meal or smoking breaks are treated differently than men who take those breaks. Rather, she argues that when short breaks are paid because the employee remains on call during them, that rule should be applied equally to similar breaks that only a nursing woman can take. *See* Docket Item 113 at 19-20. And for the reasons noted above, this Court agrees that Haner has raised a material question of fact as to discrimination in that regard.

This Court therefore denies the Defendants' motion for summary judgment dismissing Haner's claim that by requiring her to remain on call during her lactation breaks but refusing to pay her, the Defendants discriminated against her based on gender.

---

conclude that even if an employer is not required to pay for lactation breaks, such breaks must be paid when the women who take them remain on call and others are paid for similar breaks.

## IV.    RETALIATION

"Retaliation claims under Title VII . . . are also analyzed under the *McDonnell*
*Douglas* burden-shifting test described above."  *Gorzynski v. JetBlue Airways Corp.*,
596 F.3d 93, 110 (2d Cir. 2010).  "To establish a prima facie case of retaliation, [the
plaintiff] must show (1) that she participated in a protected activity, (2) that she suffered
an adverse employment action, and (3) that there was a causal connection between her
engaging in the protected activity and the adverse employment action."  *Id.*  "The final
element of a prima facie retaliation case, requiring proof of a 'causal relationship'
between the protected activity and the adverse action, can be established either (1)
'directly, through evidence of retaliatory animus' toward the plaintiff, or (2) 'indirectly,'
through 'circumstantial evidence.'"  *Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 239
(2d Cir. 2024) (quoting *Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir. 2010)).  "Such
circumstantial evidence may include '[c]lose temporal proximity' between the plaintiff's
protected activity and the adverse action taken against her."  *Id.* (quoting *Kaytor v. Elec.*
*Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010)).

Judge Pedersen found that Haner failed to establish causation based on
temporal proximity because "the alleged retaliatory acts [were] not in close temporal
proximity to the filing of any lawsuit or charge of discrimination with the EEOC."  Docket
Item 110 at 87.  Haner does not challenge that analysis, but she argues that she
nevertheless has raised an issue of fact on causation because her EEOC claims and
this litigation were pending when she was not promoted.  Docket Item 113 at 21-22.

Haner cites no case law for the proposition that there is a question of fact
regarding causation whenever an adverse action is taken while an EEOC complaint or
court action is pending.  *See id.*  And not only is it counterintuitive to suggest that the

pendency of an action—as opposed to the time it was filed—might trigger retaliation, but that would extend the temporal proximity necessary to support retaliation beyond what the courts have deemed reasonable.

Nevertheless, even assuming that Haner has established a *prima facie* case of discrimination, the Defendants offered nondiscriminatory reasons for not promoting her. That shifted the burden back to Haner to demonstrate that the reasons given were pretextual and that retaliation was the real reason behind each alleged retaliatory action.  And Haner has failed to do that.

"[T]emporal proximity alone is not enough to establish pretext in this Circuit," *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 254 (2d Cir. 2014), and Haner offers nothing other than her own conclusions to buttress her retaliation claim.  Indeed, other than temporal proximity, Haner relies only on her statement that "I believe I didn't get the spot[, i.e., the promotion] because of me being pregnant, for me being already blacklisted and not considered a team player, and being female in general."  Docket Item 67-1 at 18.  Absent any other evidence of retaliatory motive, and as addressed more fully above, Haner's belief that she was retaliated against is simply insufficient to establish pretext.  This Court therefore accepts the R&R's recommendation and grants the Defendants' motion for summary judgment on Haner's retaliation claims.

## V.    EXHAUSTION

"As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003).  Nevertheless, "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they

are reasonably related to those that were filed with the agency." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (citations omitted).

The Defendants moved to dismiss the Ninth Cause of Action, which alleges discrimination in denying Haner the 2020 promotion, and the Eleventh Cause of Action, which alleges retaliation in denying her the 2020 promotion, because Haner failed to exhaust her administrative remedies on those claims.   Docket Item 66-1 at 42; *see* Docket Item 58 at ¶¶ 108-11, 117.  As Haner notes, the R&R is inconsistent in its treatment of the Defendants' exhaustion arguments.  *See* Docket Item 113 at 23-24. The R&R first "recommends that the District Court grant [the] Defendants' motion to the extent that it asserts a failure to exhaust with respect to Plaintiff's Ninth Cause of Action and deny [the] Defendants' motion to the extent it seeks to dismiss Plaintiff's Eleventh Cause of Action," Docket Item 110 at 95, but later "recommends that the District Court deny Defendants' motion to the extent it seeks judgment on Plaintiff's Ninth Cause of Action, and grant Defendants' motion to the extent it seeks judgment on Plaintiff's Eleventh Cause of Action based on a failure to exhaust," *id*. at 97-98.

But it is apparent from Judge Pedersen's analysis that he recommends denying the motion for summary judgment on exhaustion grounds for both claims.  *See id.* at 95 (noting that the Ninth Cause of Action "arguably falls under the third exception" to the exhaustion rule); *id.* at 97 (noting that the Eleventh Cause of Action appeared to meet the requirements of the second exception of the exhaustion rule).  The Court agrees with the analysis in the R&R and finds that Haner adequately exhausted her administrative remedies for the Ninth and Eleventh causes of action.  Nevertheless, for the reasons stated above, both causes of action fail on the merits.

**<u>CONCLUSION</u>**

For the reasons stated above and in the R&R, the Defendants' motion for summary judgment, Docket Item 66, is GRANTED except as to the claim alleging disparate treatment of Haner's lactation breaks, Docket Item 58 at ¶ 82(c), for which summary judgment is DENIED.  The parties shall contact chambers within 30 days of the date of this order to schedule a status conference.


SO ORDERED.

Dated:   July 25, 2024
            Buffalo, New York


                                         */s/ Lawrence J. Vilardo*
                                         LAWRENCE J. VILARDO
                                         UNITED STATES DISTRICT JUDGE